**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

|   |   |
|---|---|
| In re Nash Engineering Co.,<br>*Debtor.* | No. 3:22-cv-00714 (VAB)<br>No. 3:22-cv-00726 (VAB)<br>No. 3:22-CV-00967 (VAB) |

**RULING AND ORDER ON APPEAL**

George Roumeliotis ("Trustee"), Century Indemnity Co. ("Century"), and Pacific

Employers Insurance Co. ("PEIC") (together, "Appellants") have appealed the United States

Bankruptcy Court for the District of Connecticut's dismissal of The Nash Engineering

Company's ("Debtor") Chapter 7 case. *See* No. 3:22-cv-714 (VAB); No. 3:22-cv-00726 (VAB);

No. 3:22-CV-00967 (VAB).[1]

For the following reasons, the Bankruptcy Court's Order dismissing the case is

**VACATED,** and the case is **REMANDED** to the Bankruptcy Court for further proceedings

consistent with this opinion.

## I.   FACTUAL AND PROCEDURAL BACKGROUND[2]

Founded in 1905, The Nash Engineering Company is a former manufacturing company

that made ring vacuum pumps used in various industries. J.A. at APP0157–APP0158 ¶¶ 13, 14,

ECF No. 22 (June 17, 2022) (Trustee's Declaration in Support of Response to Order to Show

---

[1] Case No. 22-CV-00967 was initially opened as Case No. 22-MC-00046, but the latter case was transferred, on July 27, 2022, to Case No. 3:22-CV-00967.

[2] This matter concerns three appeals filed simultaneously: No. 22-CV-00714 (VAB), No. 3:22-CV-00726 (VAB), and No. 3:22-MC-00046 (VAB). Appellants filed the same brief and joint appendix in Case No. 22-CV-00714 and Case No. 22-CV-00726. Unless otherwise indicated, the docket numbers cited to in this ruling and order refer to the documents filed in Case No. 22-CV-00714 (VAB).

Cause) ("J.A."). It ceased manufacturing operations around 2004, *id.* at APP0159 ¶ 19, and its

assets were sold off by 2008. Joint Brief of Appellants, (i) George I. Roumeliotis, Chapter 7

Trustee of Nash Engineering Co. and (ii) Century Indemnity Company and Pacific Employers

Insurance Company at 15, ECF No. 21 (June 17, 2022) ("Joint Brief of Appellants").

Before the early 1990s, The Nash Engineering Company became aware of its asbestos

liabilities connected to its pumps. J.A. at APP0158 ¶ 16. It arranged a settlement agreement with

its primary insurance carrier regarding these claims, under which the insurance company,

Hartford Accident & Indemnity Company ("Hartford"), would provide $15 million in aggregate

limits for indemnity. *Id.* ¶¶ 17, 18. Despite no longer being in operation, The Nash Engineering

Company again negotiated a second settlement with Hartford in 2018, after which The Nash

Engineering Company sought coverage under other insurance policies. *Id.* at APP0159 ¶¶ 19–21.

The Nash Engineering Company is a defendant now in over 1,600 asbestos-related cases

pending throughout the United States. *Id.* at APP0165 ¶ 53. The Trustee estimates that The Nash

Engineering Company faces tort claims exceeding approximately $180 million. *Id.* at APP0166 ¶

55.

On October 19, 2021, The Nash Engineering Company filed a voluntary Chapter 7

petition. *Id.* at APP0156 ¶ 4.

On January 25, 2022, the Bankruptcy Court held a status conference to address the

Statement of Financial, which "listed thousands of asbestos lawsuits pending throughout the

country, and the Trustee's description of the assets as 'Potential insurance policy recoveries' in

the Notice of Assets." J.A. at APP075 (Order: (I) Providing Opportunity to Show Cause Why

Court Should Not Dismiss Case Pursuant to 11 U.S.C. §§ 305 and/or 707(a); and (ii) Staying

Case Pending Ruling on Dismissal of Case).

In the Order to Show Cause, the Bankruptcy Court noted the language of 28 U.S.C. § 157(b)(2)(B), which excludes "liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate" as "core proceedings;" the *In re Gawker Media L.L.C.*, 571 B.R. 612, 619 (Bankr. S.D.N.Y. 2017) decision; and the fact that over 1,000 asbestos cases are pending in courts around the country on an issue that "arise[s] exclusively under state law, not bankruptcy law." J.A. at APP0077–APP0078.

The Debtor, Trustee, Century, PEIC, and the purchaser of Debtor's assets, filed responses to the Order to Show Cause. J.A. at APP0080–APP0223.

On May 25, 2022, the Bankruptcy Court issued an order dismissing the case under 11 U.S.C. § 707(a). J.A. at APP0224–APP0239.

On May 26, 2022, the Trustee filed a notice of appeal in the U.S. District Court for the District of Connecticut. J.A. at APP0240–APP0256.

On May 27, 2022, the Bankruptcy Court denied the Trustee's emergency motion for stay pending appeal. J.A. at APP0257–APP0262.

On May 31, 2022, Century and PEIC filed a notice of appeal in the U.S. District Court for the District of Connecticut. J.A. at APP0269–APP0297. The Appellants request that the Bankruptcy Court's May 25, 2022 order be reversed and that this case be assigned to a different judge on remand. Joint Brief of Appellants.

On June 2, 2022, the Court granted motions to stay in all three cases, ordered briefing, and scheduled a hearing.

On June 17, 2022, the Trustee, Century, PEIC filed a joint brief. Joint Brief of Appellants.

On July 27, 2022, the Court held a hearing concerning Appellants' request that the Bankruptcy Court's May 25, 2022 order be reversed. No. 3:22-CV-00714, Min. Entry, ECF No. 29 (July 27, 2022); No. 3:22-CV-00726, Min. Entry, ECF No. 22 (July 27, 2022); 22-MC-00046, Min. Entry, ECF No. 7 (July 27, 2022).

## II.   STANDARD OF REVIEW

A district court has jurisdiction to review final judgments, orders, and decrees made by the bankruptcy courts. 28 U.S.C. § 158(a)(1). "[I]n bankruptcy appeals, the district court reviews the bankruptcy court's factual findings for clear error and its conclusions of law de novo." *In re Charter Commc'ns*, 691 F.3d 476, 482–83 (2d Cir. 2012); *see also Papadopoulos v. Gazes*, No. 14-CIV-3713 (KPF), 2014 WL 3928940, at *4 (S.D.N.Y. Aug. 12, 2014) ("In general, a district court reviews a Bankruptcy Court's findings of fact for clear error and its conclusions of law de novo." (internal quotation marks omitted)).

"Because a bankruptcy court's decision to dismiss for cause [under 11 U.S.C. § 707(a)] is guided by equitable principles, it is reviewed for abuse of discretion." *In re Murray*, 565 B.R. 527, 530 (S.D.N.Y. 2017), *aff'd*, 900 F.3d 53 (2d Cir. 2018). "A bankruptcy court exceeds its allowable discretion where its decision (1) 'rest[s] on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding,' or (2) 'cannot be located within the range of permissible decisions,' even if it is 'not necessarily the product of a legal error or a clearly erroneous factual finding.'" *In re Smith*, 507 F.3d 64, 73 (2d Cir. 2007) (quoting *Schwartz v. Aquatic Dev. Grp., Inc. (In re Aquatic Dev. Grp., Inc.*), 352 F.3d 671, 678 (2d Cir. 2003) (internal quotation marks omitted)).

## III.  DISCUSSION

The Bankruptcy Court concluded that cause existed to dismiss this case under 11 U.S.C.

§ 707(a). Specifically, it concluded that cause existed for two reasons: (1) because under 28

U.S.C. § 157(b)(2)(B) "contingent or unliquidated personal injury tort claims cannot be

liquidated or estimated for purposes of distribution in a Chapter 7 case," J.A. at APP0230, and

(2) the case "lacks a legitimate bankruptcy purpose," *id.* at APP0235.

Section 707(a) provides that a bankruptcy court "may dismiss a [Chapter 7] case . . . only

after notice and a hearing and only for cause." 11 U.S.C. § 707(a). The section does not define

"cause" and only provides an unexhaustive list of what may constitute cause. "Courts must

'engage in case-by-case analysis in order to determine what constitutes cause sufficient to

warrant dismissal.'" *In re Murray*, 900 F.3d 53, 58 (2d Cir. 2018) (quoting *In re Dinova*, 212

B.R. 437, 442 (B.A.P. 2d Cir. 1997)). Cases filed in bad faith or in an attempt to inappropriately

use the Code can be dismissed under § 707(a). *In re Murray*, 543 B.R. 484, 490 (S.D.N.Y.

2016). Courts in the Second Circuit have identified a number of factors that bankruptcy courts

may consider in deciding whether a case was filed in bad faith. *See In re Murray*, 543 B.R. at

490–91 (explaining the factors that bankruptcy courts may consider when determining whether

there is cause for dismissal); *see also C-TC 9th Avenue Partnership v. Norton Comp.*, 113 F.3d

1304, 1311–12 (2d Cir. 1997) (listing out factors that may be "indicative of a bad faith filing").

Proceedings in bankruptcy cases are considered either "core" or "non-core." *In re*

*Chateaugay Corp.*, 111 B.R. 67, 70–71 (Bankr. S.D.N.Y. 1990). Core proceedings under 28

U.S.C. § 157(b)(2)(B) "include, but are not limited to . . ."

> allowance or disallowance of claims against the estate or
> exemptions from property of the estate, and estimation of claims or
> interests for the purposes of confirming a plan under chapter 11, 12,
> or 13 of title 11 but not the liquidation or estimation of contingent

> or unliquidated personal injury tort or wrongful death claims against
> the estate for purposes of distribution in a case under title 11.

28 U.S.C. § 157(b)(2)(B). "[I]n 'non-core' proceedings the bankruptcy judge is authorized only to conduct a hearing on such proceedings and to submit proposed findings of fact and conclusions of law to the district court for final disposition which are subject to *de novo* review by the district court[.]" *In re Chateaugay Corp.*, 111 B.R. at 70 n.4.

In the Bankruptcy Court's view, the plain language of 28 U.S.C. § 157(b)(2)(B) "provides that contingent or unliquidated personal injury tort claims cannot be liquidated or estimated for purposes of distribution in any bankruptcy case, including a Chapter 7 case," J.A. at APP0247, and removes this type of case from consideration as "core" proceedings, *id.* at APP0248. The Bankruptcy Court further explained that the legislative history of this statute confirms "the intent of Congress to preclude the liquidation or estimation of the asbestos personal injury claims that is proposed by the Chapter 7 Trustee in this case." *Id.* In *Gawker*, consistent with testimony before a Senate hearing on amendments to the Bankruptcy Code— amendments considered in light of the U.S. Supreme Court's decision in *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1983)— the court noted that, "'the bankruptcy courts have other challenging and difficult issues to deal with and should not be a repository for thousands and thousands of personal injury claims and the necessity to litigate those.'" *Gawker*, 571 B.R. at 621 (internal citations omitted). Then, in response to the *Northern Pipeline* decision, Congress passed Section 157(b)(2)(B). J.A. at APP0247. As a result of this legislative amendment, and consistent with the reasoning in this recent bankruptcy decision, the Bankruptcy Court concluded that there is no legitimate bankruptcy purpose in this case and dismissed the case. *Id.* at APP0251–APP0256.

The Bankruptcy Court concluded that there also is no legitimate bankruptcy purpose because the bankruptcy "'serves no purpose, results in no benefit for its creditors or the debtor, and only delays litigation already pending against the debtor.'" *Id.* at APP0253 (quoting *In re Cypress Fin. Trading Co., L.P.*, 620 F. App'x 287, 289 (5th Cir. 2015); citing *In re Int'l Zinc Coatings & Chem. Corp.*, 355 B.R. 76, 85 (Bankr. N.D. Ill. 2006)). In the Bankruptcy Court's view, there is no legitimate bankruptcy purpose where the only assets of the bankruptcy estate are lawsuits that the creditors themselves can pursue outside of bankruptcy, *id.* at APP0255 (citing *In re Int'l Zinc Coatings & Chemical Corp.*, 355 B.R. at 87; *In re Cincinnati Gear Co.*, 304 B.R. 784, 786 (Bankr. S.D. Ohio 2003) ("Courts have consistently held that dismissal is appropriate under § 305(a)(1) where the only estate assets are alleged lawsuits.")), and "where the estate will simply incur massive administrative costs that will reduce creditors 'eventual recovery," *id.* at APP0255–APP0256 (citing *In re Smith*, 507 F.3d 64, 75 (2d Cir. 2007); *In re Int'l Zinc Coatings & Chemical Corp.*, 355 B.R. at 87; *In re Bean*, 251 B.R. 196 (E.D.N.Y. 2000)). According to the Bankruptcy Court, the Debtor has "resolved more than 27,000 asbestos personal injury claims" despite being out of business for over 20 years, but "when it recently discovered it ran out of insurance coverage to address the remaining claims, it decided to hand the problem over to the bankruptcy court." *Id.* at APP0254.

Appellants argue that the case has a legitimate bankruptcy purpose—primarily, to maximize the property available to satisfy creditors and to promote equitable distribution of debtor assets. Joint Brief of Appellants at 33 (citing *In re Tronox, Inc.*, 855 F.3d 84, 106 (2d Cir. 2017)). According to Appellants, the Trustee is due the benefit of the business judgment rule, under which it "'[is] appropriate for the Bankruptcy Court to accept . . . [the trustee's] decision'" as long as the "'decision was not made arbitrarily, or in bad faith.'" *Id.* at 24 (quoting *In re*

*Interiors of Yesterday, LLC*, Nos. 02-30563LMW, 233, 275, 276, 363, 2007 WL 419646, at *3–*4 (Bankr. D. Conn. Feb. 2, 2007)). Thus, in its view, the Trustee's opinion that certain claims with significant legal and factual support can be asserted in order to increase the pool of assets available to creditors should have been given greater weight. *Id.* at 24–26. As to the fee structure proposed by the Trustee, Appellants note that the proposed fee structure is consistent with the Trustee's practice in this District. *Id.* at 30. Appellants also contest the argument that creditors can bring these lawsuits, as "[o]nly the Trustee, standing in the Debtor's shoes, has standing to pursue such claims." *Id.* at 31 (citing *Baker v. Taylor, Inc. v. AlphaCraze.com Corp.*, No. 3:07-CV-1851, 2011 WL 3555783 (D. Conn. Aug. 8, 2011)).

Appellants also argue that "[s]ection 157 does not limit federal bankruptcy jurisdiction, but divides it between bankruptcy courts and district courts." Joint Brief of Appellants at 43. According to Appellants, there is no prohibition against bankruptcy courts administering this type of case. *Id.* at 50. In Chapter 7 cases, they argue, special procedures for processing large numbers of claims "are proposed by motion and approved by the bankruptcy court after notice and an opportunity to be heard." *Id.* at 48. In support, Appellants cite to and provide documents from several cases, which they claim are "Chapter 7 cases involving asbestos bodily injury claims [that] have achieved results that greatly benefitted claimants." *Id.* at 50. In their view, the Bankruptcy Court erred in dismissing the case and this decision should be reversed.

The Court agrees.

In support of its finding of no legitimate bankruptcy purpose, the Bankruptcy Court relied on precedent both not binding, and factually distinct from this case. The Fifth Circuit's decision in *In re Cypress* is distinguishable in a fundamental way. The Fifth Circuit concluded that "there are no assets to marshal or liquidate, and applicable statutes of limitations bar any preference or

fraudulent transfer actions that might lead to additional assets." 620 F. App'x at 289. But, the debtor not only had no assets, but also had "no viable claims or causes of action, and no other money-making prospects." *Id.* at 287–88. Similarly, in *In re Int'l Zinc Coatings & Chemical Corp.*, a Northern District of Illinois case, the court identified no viable actions for the trustee to bring. *In re Int'l Zinc Coatings & Chemical Corp.*, 355 B.R. at 86 ("The [C]hapter 7 trustee also appears to have concluded there are no avoidance actions or other bankruptcy causes of action she can pursue to recover property for the estate."). The court dismissed the case because the debtor, in that court's view, was maintaining a bankruptcy case "to provide a new venue for the four products liability actions, a venue 900 miles north of Louisiana and its courts." *Id.*

In this case, the record does not provide—nor has the Bankruptcy Court cited, or this Court been able to identify—any similar bad faith attempt by the Debtor or Trustee to use the bankruptcy process to manipulate other proceedings, except to maximize the property available for creditors and ensure equitable distribution. While "the bankruptcy court is not a collection agency," *In re Mountain Diaries, Inc.*, 372 B.R. 623, 635 (Bankr. S.D.N.Y. 2007), it "is a *collective remedy*, with the original purpose—which continues to this day—to address the needs and concerns of creditors with competing demands to debtors' limited assets, and with the understandable desire that the debtor's assets not go to the swiftest, or the most aggressive, of them." *In re Murray*, 543 B.R. at 494–95. Indeed, in proceedings elsewhere, parties are already racing to court to claim a piece of the existing insurance proceeds, proceeds which would be part of the bankruptcy estate, if this case moved forward in Bankruptcy Court. Joint Brief of Appellants at 29.

Courts in other districts have held that "[w]hen the only asset of a bankruptcy estate is a lawsuit, particularly one that creditors themselves can pursue, no purpose is served in keeping

the bankruptcy case alive so a trustee can prosecute the lawsuit for them." *In re Int'l Zinc Coatings & Chemical Corp.*, 355 B.R. at 87 (citing *In re Cincinnati Gear Co.*, 304 B.R. 784, 786 (Bankr. S.D. Ohio 2003)). As to the lawsuit against Debtor's directors, for breach of fiduciary duty, "no court has recognized a direct cause of action for creditors to bring a breach of fiduciary duty claim against corporate directors under Connecticut law," *Baker & Taylor, Inc.*, 2011 WL 3555783, at *2, although "some decisions have held that creditors of an insolvent corporation may have standing to bring derivative claims against a director on behalf of the corporation," *id.*

But even if creditors were allowed to bring all the lawsuits that the Trustee has identified, the creditors stand to benefit from this bankruptcy case. Indeed, "[t]he whole point of channeling claims through bankruptcy is to avoid creditors getting ahead of others in line of preference and to promote equitable distribution of debtor assets." *In re Tronox Inc.*, 855 F.3d 84, 106 (2d Cir. 2017). Moreover, the estate is not fully dependent on lawsuits, as it still can depend on "approximately $3 million due" under a settlement with Century and PEIC. Joint Brief of Appellants at 7. As to the fees and administrative costs, the request for 33% of the assets recovered by the bankruptcy state is not unprecedented. *See In re Flanagan*, 387 B.R. 360, 361 (Bankr. D. Conn. 2008) (indicating that the bankruptcy court, in this Chapter 7 case, had previously entered an order permitting employment of a special counsel on "a contingent fee basis of one-third (1/3) of all amounts recovered" (emphasis omitted)). As discussed further below, however, these are case management issues, and not standalone bases for outright dismissal.

As to the Bankruptcy Court's 28 U.S.C. § 157(b)(2)(B) argument, the plain language of the statute does exclude "the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution" from the core

proceedings that bankruptcy courts "may hear." 28 U.S.C. § 157(b)(2)(B). The legislative history of the provision also supports this plain reading, and suggests that Congress did not wish to force asbestos plaintiffs into bankruptcy court. *See* J.A. at APP0248–APP0249 (citing *The Manville Bankruptcy and the Northern Pipeline Decision: Hearing on The Manville Bankruptcy and Amendments To the Bankruptcy Code Relating To The Northern Pipeline Decision*, 98th Cong. 37 (1982) (statement of Robert Steinberg, Esq. appearing on behalf of the Asbestos Litigation Group), *reprinted in* Arnold & Porter Llp Legislative History: P.L. 98-353 (1993)).

And Appellants' presentation of the case right up until the filing of the Order to Show Cause suggested that the Bankruptcy Court may be asked to deal with proceedings that are the province of state and district courts. *See In re Gawker Media LLC*, 571 B.R. at 619 ("The 'liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution' in a bankruptcy case is not core, 28 U.S.C. § 157(b)(2)(B), and must be tried in the District Court where the bankruptcy case is pending or where the claim arose. 28 U.S.C. § 157(b)(5)."); *see also In re Chateaugay Corp.*, 111 B.R. at 72 ("The cases are clear that a bankruptcy court may not hear proceedings to liquidate or estimate personal injury tort or wrongful death claims for the purpose of determining the distribution payable to such claimants.").

Specifically, Appellants appear to have filed two motions that sought to involve the Bankruptcy Court in the asbestos claims and the lawsuits geared toward recovering assets. *See* J.A. at APP0001–APP0016 (Docket Sheet from Bankruptcy Court proceeding, showing that on December 29, 2021 the Trustee filed a "Motion to Extend Time to Remove State Court Actions Currently Pending Against Debtor to the District Court to May 17, 2022" and on April 19, 2022,

the Trustee filed a "Motion for Order Emergency Motion of Chapter 7 Trustee for Permission to

Serve Demand Upon Directors, Officers and Nationwide Management Liability & Specialty").

But 28 U.S.C. § 157(b)(2)(B) alone also is not a basis for dismissing the case at this stage

of the proceeding. Appellants' litany of Chapter 7 cases show that resolutions are possible in

these cases, even if they involve non-core proceedings, which the Bankruptcy Court need not,

and should not, take control over. *See, e.g.*, J.A. at APP0452 (In re Quintec Indus., Inc., Trustee's

Mots. to 1) Approve Settlements of All Known Remaining Timely Filed Unsecured Claims and

2) Promptly Pay All Remaining Timely Filed Unsecured Claims in Full, which notes that the

debtor had a claim against an insurance company, and that the claim was sold at auction in order

to monetize the claim); J.A. at APP0671–APP0672 (In re National Service Industries, Inc.,

Trustee's Mot. to Establish Procedures for Determination of Asbestos Related Claims Pusuant to

Fed R. Bankr. P. 9019, which notes that before filing a petition for relief under Chapter 7, the

debtor had "negotiated settlement agreements with most of its insurers"); J.A. at APP0732–

APP0733 (In re C.P. Hall Co., Debtor's Mot. for Extension of Exclusive Periods for Filing a

Plan and Obtaining Confirmation Thereof, which notes that, after converting from a Chapter 11

case to a Chapter 7 case, the trustee agreed to continue prosecuting the estate's interest in claims

against insurers).

Rather than dismiss the case outright, as one filed in bad faith, consistent with 28 U.S.C.

§ 157(b)(2)(B), the Bankruptcy Court could have clarified what would not happen in this case:

"proceedings to liquidate or estimate personal injury tort or wrongful death claims for the

purpose of determining the distribution payable to such claimants." *In re Chateaugay Corp.*, 111

B.R. at 72. And, if the Trustee or any other party before it, at any time, sought to have the

Bankruptcy Court conduct such a proceeding, the Bankruptcy Court simply would deny any such effort. *Id.*

In contrast to this approach to the 28 U.S.C. § 157(b)(2)(B) issue, the Bankruptcy Court adopted another one: dismissal of the case in its entirety. But the Bankruptcy Court cited to no case supporting the dismissal of the case in its entirety because of a 28 U.S.C. § 157(b)(2)(B) issue. Nor has this Court identified one. In the absence of such caselaw, and given the numerous cases in which issues, even ones squarely limited by 28 U.S.C. § 157(b)(2)(B), have been adjudicated in bankruptcy courts elsewhere, presumably consistent with 28 U.S.C. § 157(b)(2)(B), the Bankruptcy Court's bad faith ruling on 28 U.S.C. § 157(b)(2)(B) grounds cannot be sustained.

To be clear, upon remand, the Bankruptcy Court is not expected to resolve this case in a manner in contravention of its mandate or jurisdiction. Nor should the Bankruptcy Court hesitate to manage this case to ensure that the assets of the bankruptcy estate are not unnecessarily depleted, and that the actions taken by the Trustee are sufficiently appropriate. *See In re Bean*, 251 B.R. 196, 204 (E.D.N.Y. 2000) ("In making a decision, a trustee, cognizant of his fiduciary role, must avoid spurious lawsuits as well as those which, while having theoretical merit, would be unduly expensive to the estate, involve undue risk to the estate or likely result in minimal recovery for the estate."). These common concerns, however, are not a basis—at least, by themselves—for this case's dismissal at this time.

Finally, despite Appellant's request for a new assignment, and the Bankruptcy Court's previous adverse ruling against the Appellants, there is "little doubt" that the Bankruptcy Court would follow "the law on remand." *Shcherbakovsky v. Da Capo Al Fine, Ltd.*, 490 F.3d 130, 142 (2d Cir. 2007). And rather than demonstrating a "visceral judgment on appellant's personal

credibility," *id.*, one circumstance considered when reassignment has been ordered, the Bankruptcy Court's detailed and thoughtful order, although vacated by this ruling, is neither vituperative nor intemperate.

Accordingly, the Court will vacate the Bankruptcy Court's decision dismissing the case, and remand the case back to the Bankruptcy Court

## IV.  CONCLUSION

For the reasons discussed above, the Court **VACATES** the Bankruptcy Court's decision dismissing the case, and **REMANDS** this case back to the Bankruptcy Court for further proceedings consistent with this opinion.

**SO ORDERED** at Bridgeport, Connecticut this 5th day of August, 2022.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE